## SOUTHERN RAILWAY COMPANY *v.* SCOTT.

1. A charge instructing a jury to take into consideration and give the proper effect to any evidence before them, if there be such, tending to show that there was a reasonable prospect of increased earnings on the part of the plaintiff in case he had not been injured, should not be given, where there is no evidence to warrant it.
2. In a case where they are applicable, we can not hold that the instruc- tions which were formulated in *Florida Central R. Co.* v. *Burney,* 98 *Ga.* 1, and which it was suggested might be properly given in connec- tion with mortality and annuity tables, are calculated to confuse the jury.
3. There may have been some slight inaccuracy of expression in the charge of the court in other respects complained of, but it will doubtless be corrected on a new trial.

Argued April 22,—Decided May 14, 1907.

Action for damages. Before Judge Bartlett. Paulding superior court. May 5, 1906.

*Shumate & Maddox* and *A. J. Camp,* for plaintiff in error.

*J. J. Northcutt* and *W. E. Spinks,* contra.

LUMPKIN, J.   Scott brought suit against the Southern Railway Company on account of a personal injury.   He recovered a verdict. The defendant moved for a new trial, which was refused, and it excepted.

1. One ground of the motion for a new trial was because the court charged as follows: "You should also take into consideration and give the proper effect to any evidence before you, if there be such, tending to show that there was a reasonable prospect of increased earnings on the part of the plaintiff in case he had not been injured."   The objection was that there was no evidence on which to predicate this charge.   The language is taken from the suggested form of charge in *Florida Central R. Co.* v. *Burney,* 98 *Ga.* 1, 14. It may therefore be treated as good law, if it is applicable under the evidence in the case.   It will be observed, however, that this was not stated as appropriate to be given in every charge on the subject of damages, where diminution of earning capacity is claimed. It is contained in a note at the close of the general suggestion as to a charge which might appropriately be given in connection with the mortality tables, and is introduced by the following language: "In a proper case, the reading of paragraph 12 of charge 1, as a part of charge 2, may be followed by giving the additional instruction below quoted.   In this connection, however, see note at end of charge 1."   Turning to the note thus referred to, we find the following: "If the evidence so warrants, an additional instruction, such as is embraced in the words below quoted, may be added to paragraph 12.   But this should not be done unless, in view of all the testimony, the propriety and fairness of such an instruction is manifest."   Then follows a charge similar to that given.   It will thus be seen that it was not the intention of this court to say that in all cases it would be proper to give to the jury a charge on the subject of prospects of increased earnings; but only where the evidence authorized it.   Here the entire evidence on this subject was to the effect that the plaintiff was a drayman; that he had been so engaged for a year and a half; that he was twenty-nine years of age, in good health, and was earning $1.25 per day.   The station-agent testified that the plaintiff was of sober habits, as far as he had seen.

This question is practically controlled by the decision in *Georgia Cotton Oil Co.* v. *Jackson,* 112 *Ga.* 620.   From the record on file it appears that the plaintiff testified, that he was thirty-eight years

of age; that he had always had good health, had always had good work, and was never without a job; that at the time of the injury he was earning $1 per day; and that by reason of the injury, four of his fingers were crushed, one of them so badly that it had to be taken off, and another so as to become stiff, diminishing his capacity to labor. The court charged: "You should take into consideration his health, heredity, and age, prospects of increased earnings from experience or skill required," etc. This was held to be error, the court saying: "A charge instructing a jury to take into consideration a plaintiff's 'prospects of increased earnings' should not, when there is no evidence to warrant it, be given." In the opinion, referring to the fact that this charge followed the opinion in *Florida Central R. Co.* v. *Burney,* 98 *Ga.* supra, it was said: "We took especial pains to state precisely when a charge with respect to increased earning capacity would be authorized, viz.: when 'the evidence so warrants.'" In *Richmond & Danville R. Co.* v. *Allison,* 86 *Ga.* 145, it was held that "No fixed rule exists for estimating the amount of damages from permanent injuries to the person. The amount should be reasonable and just to both parties, and should compensate the injured one for the loss of money which he would probably earn had not the injuries occurred. While it is proper to prove the age, habits, health, occupation, expectation of life, ability to labor and the probable increase or diminution of that ability with lapse of time, the rate of wages, etc., and then leave it to the jury to assess the damages, it is improper to allow proof of a particular possibility, or even probability, of any increase of wages by appointment to a higher public office, especially where the appointment is somewhat controlled by political reasons." In illustrating the fact that mortality tables furnished no fixed and inflexible rule for the jury, Mr. Justice Simmons referred to the possible increasing capacity of a young man, just starting life, to earn money as he progresses, if sober, industrious, and capable; and to the diminishing capacity of age (pp. 149, 150). But on page 152 he returned to the question of proper evidence on the subject. Probably the expressions used in the two parts of this opinion and that in the *Georgia Cotton Oil Co.* case, supra, may be shown to be harmonious on some such view as this: As a general rule, where a man is engaged in business or work, no exact procrustean rule as to measuring damages for a permanent injury is laid down. The

jury may, but is not compelled, to adopt the mortality tables as a basis of calculation. The amount found should be reasonable and just to both parties, and should reasonably compensate the plaintiff for the loss of money which he would probably earn, under the evidence, if he had not been injured. A charge along this line is not erroneous, if based on evidence. The jury, in applying it, will, no doubt, use their common sense and the common knowledge of all men. All men know that, in the ordinary course of nature, a man is born, grows to maturity, has his meridian, grows old, with waning powers, and dies. The jury may, and, no doubt, will consider these things, where material, as bearing on the proper estimate of damages. But the presiding judge should not single out and direct their attention to the question of a plaintiff's "prospect of increased earnings," unless there is some evidence on which to base it. In Richmond & Danville R. Co. v. Elliott, 149 U. S. 266, it was held error to admit evidence of an injured railroad coupler and switchman, who was receiving $1.50 per day, that his prospects for advancement in the service of the company were good; that he had several times been called on, in the absence of the yardmaster, to take his place; that there was "a system by which you go in there as coupler or train-hand, or in the yard, and if a man falls out you stand a chance of taking his place;" and that the average yard conductor received a salary of $60 to $75 per month. In the opinion Mr. Justice Brewer made use of the following language: "Of course, there are possibilities and probabilities before every person, particularly a young man, and a jury in estimating the damage sustained will doubtless always give weight to those general probabilities, as well as to those springing from any peculiar capacities or faculties. But that is a different matter," etc. Evidently the learned Justice did not mean that the judge could charge the jury as to peculiar capacities or faculties, if there were no evidence of them. See also *City Council of Augusta* v. *Owens*, 111 *Ga.* 464 (9); Colorado Coal & C. Co. v. Lamb, 6 Col. App. 267.

The case of a suit for damages which will accrue after majority, from a permanent injury to a child of tender years, who has selected no profession or vocation, need not be discussed. There the measure of damages must be largely left to the enlightened consciences of impartial jurors, not acting arbitrarily or capriciously, but seeking to fix an amount which will fairly compensate for the

injury received. *Davis* v. *Central Railroad,* 60 *Ga.* 329; *Western & Atlantic R. Co.* v. *Young,* 81 *Ga.* 397 (12 Am. St. Rep. 594); Rosenkranz v. Lindell Ry. Co., 108 Mo. 9 (32 Am. St. Rep. 588). Nor are we called on to enter into an extended discussion of evidence which may be introduced to authorize a charge as to prospects of increased earnings. An illustration or two may suffice to throw light on the subject. In Chicago etc. Ry. Co. v. Long, 26 Tex. Civ. App. 601, where a section-hand on a railroad was injured, and sought to recover for loss of earning capacity, it was held that the fact that when injured he was engaged as a section-hand and was earning $1.25 per day would not prevent his pleading and proving that he was a blacksmith, and capable of earning more at such a trade. See also Railway v. St. Clair, 21 Tex. Civ. App. 345 (55 S. W. 16). In Illinois Central R. Co. v. Davidson, 76 Fed. 517, it was held that "Where the averment of special damages only shows loss of commissions from plaintiff's employer at the time of the injury, but such employer is the successor of a company whom plaintiff had previously served in the same capacity and under the same contract, evidence of plaintiff's earnings while employed by such company is admissible." Suppose a young lawyer twenty-five years of age received a permanent injury for which he was entitled to recover, and which diminished or destroyed his capacity to practice his profession, we can well see how evidence might be introduced as to his age, preparation, and capacity as a lawyer, industry, habits, what he was earning, that his practice and earnings were increasing, or other like evidence; and that this might furnish a basis for a charge as to prospects of increase of earnings. In the *Allison* case, supra, it was intimated (p. 153) that if one had a contract for increased wages or promotion perhaps that would be admissible. And in Elliott's case, supra (p. 268), Mr. Justice Brewer said that perhaps a fixed rule of promotion might be shown. In the nature of things no exact rule can be prescribed, specifying what evidence may and what may not be admissible in all cases. Sufficient unto the day is the case thereof. The foregoing is rather suggestive and illustrative than exhaustive, or an effort to prescribe a rule as to cases where such evidence may be admissible and such a charge may be given. In an early part of the charge the judge informed the jury that he did not intimate to them what had or had not been proved, and that if anything he said

had that appearance, it should be disregarded; and also that they should find the facts from the testimony submitted on the trial. But this will not serve to correct the error in a later part of the charge of directing the attention of the jury specifically to the question of a reasonable prospect of increased earnings, and submitting that issue to them with no evidence on which to base it. The case was one closely contested on its facts; and we can not say that the error was harmless.

2. Objection is made to the fact that the court erred in reading to the jury the entire charge suggested in the 98 *Ga.,* on the ground that, while it is an exhaustive treatment of the subject of the measure of damages in cases in which it is applicable, and very valuable to the trial court, yet the distinctions, qualifications, and limitations contained in it, which can be readily understood by the professional mind, may be confusing to the jury, rather than helpful. It was insisted that this charge should be condensed, and the salient points applicable to any case on trial should be distinctly and clearly stated to the jury. It was not held in that case that the charge suggested must be given in all cases where suit was brought for a homicide or for a personal injury. But certain charges were suggested as appropriate and explanatory of the use of mortality and annuity tables, if introduced in evidence, and with reference to the estimating of damages. They were prepared by a member of this court and approved as part of an opinion, with a view to enlightening the jury; and we can not hold that their use in a proper case was calculated to confuse that body.

3. There may have been some slight inaccuracy of expression in the charge of the court in other respects, but there is nothing else that requires special discussion. As the case will be retried, we express no opinion as to the sufficiency of the evidence.

*Judgment reversed. All the Justices concur.*