EASTERN TEXAS ELECTRIC CO. v. TUCKER. (No. 1308.)

(Court of Civil Appeals of Texas. Beaumont. July 5 and 8, 1926. Rehearing Denied Oct. 20, 1926.)

1. Carriers ⟨⟩321(5) — In passenger's action for injuries while boarding street car from platform, instruction that it was duty of carrier "to keep and maintain" platform in "reasonably safe condition," held erroneous as making liability of defendant absolute.

In action by passenger to recover for injuries sustained by falling through hole in platform used in boarding defendant's street car, instruction that it was duty of carrier "to keep and maintain" the platform in a "reasonably safe condition," held erroneous as in effect making liability of defendant absolute.

2. Carriers ⟨⟩286(1)—Where street railway was authorized to use platform to extent of 24 inches outside of rails, mere use of entire platform held not to render carrier liable for injuries to boarding passenger who fell through hole 33 inches from rail.

Where defendant street railway was authorized by franchise to use platform extending over entire street to extent of 24 inches outside of rail, mere use by carrier of entire platform held not to render carrier liable for injuries sustained by passenger who fell through hole in platform 33 inches from outer rail, while waiting for street car.

3. Carriers ⟨⟩318(2)—In passenger's action for personal injuries by falling through defective platform while boarding street car, evidence held insufficient to show that carrier constructed and maintained platform.

Where plaintiff was injured by falling through hole in platform used by defendant as an approach to street car she was boarding, evidence held insufficient to show defendant constructed and maintained platform.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Action by Bettie Tucker against the Eastern Texas Electric Company and another. Judgment for plaintiff, and defendant named appeals. Reversed and remanded.

Orgain & Carroll, of Beaumont, for appellant.

John M. Conley and P. D. Renfro, both of Beaumont, for appellee.

HIGHTOWER, C. J. This suit was filed in one of the district courts of Jefferson county by the appellee, Mrs. Bettie Tucker, against appellant the Eastern Texas Electric Company and the city of Beaumont, as defendants, it being alleged by the appellee in her petition that on or about the first of October, 1921, she sustained personal injuries in consequence of the negligence of both defendants at a time when she was about to take passage on one of appellant's street cars. She alleged, in substance, that the accident occurred at the intersection of Elgie and Ogden streets in the city of Beaumont, in the following manner:

That between 7:30 and 8 o'clock at night, appellee had gone to a bridge, platform, or culvert which was placed in Elgie street, and had gotten on this bridge, platform, or culvert to await the arrival of the street car, and that just as she took a step or so on the bridge some portion of the same, by reason of defective material and insecure fastenings, gave way, and that she fell through a hole in the bridge by reason of the material

giving away, or that the hole was already there and that she fell into it, and thereby sustained a hernia. She alleged, in substance, that the city of Beaumont, under its charter, had the management, control, and right to use its public streets and alleys in the city, and that it was its duty to maintain the same so as to keep them reasonably safe for persons using them, and that the city was guilty of negligence in having this bridge in Elgie street in the unsafe and dangerous condition that caused her injuries. Appellee further alleged that appellant the Eastern Electric Company and other street railway companies to whose interests appellant had succeeded, had constructed, maintained, and used the bridge, platform, or culvert in question, and had designated and established the same as a platform or bridge for patrons of appellant to board and alight from its street cars at the intersection of Elgie and Ogden streets, and, in substance, that appellant had invited people in general to use such bridge, platform, or culvert as a platform in boarding and alighting from its street cars at this point, and that it was the duty of appellant to maintain and keep said bridge, platform, or culvert in reasonably safe repair for the use of the public as such platform; but that appellant had negligently failed to maintain and keep this bridge or platform in a reasonably safe condition to be used as a platform by persons boarding and alighting from its street cars at said point, and had permitted the planks in the same to become weak and rotten and insecurely fastened, and had permitted holes to come in the bridge, and that on the occasion of appellee's injuries she stepped upon one of these weak or rotten boards or planks in the bridge and it gave way with her, or that she stepped in a hole that appellant had negligently permitted to be in the bridge and thereby sustained her injuries. This will be a sufficient statement of the allegations of appellee's petition.

Both defendants answered, and, since there was an instructed verdict in favor of the city of Beaumont, we will not state the defensive matters set up by that defendant, there being no complaint to the action of the court in giving the peremptory instruction as to that defendant. Appellant answered by general demurrer, a number of special exceptions, general denial, a general plea of contributory negligence on the part of appellee, and further specially answered, in substance, that, under the provisions of its franchise granted by the city of Beaumont and the city charter, appellant was not required to keep in repair any portion of the street where this accident occurred, with the exception of the space between its track rails and for a distance of 24 inches on the outside of each of its track rails, and that it did keep in repair the street between its track rails and for 24 inches from the outside of each of its track rails, and that the injury to the appellee, if any was sus-

tained by her, was because of some condition in the bridge or platform which was more than 24 inches from the outside of either of its track rails, and that appellant was not liable to appellee for such injury. This stated sufficiently, in substance, the defensive matters set up by appellant.

The case was tried with a jury, and the court's charge, after defining "negligence," "ordinary care," "contributory negligence," and "proximate cause," and after pointedly telling the jury that appellant was a common carrier, submitted to the jury the following special issues:

"Question 1. Did the Eastern Texas Electric Company by long custom or otherwise, adopt, designate, and commonly use the culvert in question as its place for receiving and discharging passengers?"

To this the jury answered, "Yes."

"Question 2. On or about the 1st day of October, A. D. 1921, at the time of the alleged injury to plaintiff, was there a weak and unsafe place, or insufficient strength to support a person of ordinary weight on said culvert or platform, where plaintiff undertook to board said street car?"

To this the jury answered, "Yes."

"Question 3. If, in answer to the foregoing question 2, you say 'Yes,' and only in that event, then answer this question: Considering all the evidence in the case, was such weak and unsafe place within 2 feet of the defendant's railroad track?"

To this the jury answered, "No."

"Question 4. If in answer to the foregoing question 3, you say 'No,' then give in figures the distance, if any, such weak and unsafe place was, if any, from said railroad track."

To this the jury answered, "About 33 inches."

"Question 5. If in answer to question 2 you say 'Yes,' and only in that event, then answer this question: Did the plaintiff, on or about the 1st of October, 1921, while waiting for said street car, step upon said weak and unsafe place?"

To this the jury answered, "Yes."

"Question 6. If, in answer to the foregoing question 5, you say 'Yes,' and only in that event, then answer this question: Was she injured thereby, as alleged in her petition?"

To this the jury answered, "Yes."

"Question 7. If, in answer to question 5, you say 'Yes,' and only in that event, answer this question: Was she in so doing, in any way, guilty of contributory negligence?"

To this the jury answered, "No."

"Question 8. If, in answer to questions 1 and 2, and each of them, you say 'Yes,' and only in that event, then answer this question: Was the defendant, the Eastern Texas Electric Company, guilty of negligence, as that term is hereinbefore defined, in permitting that defect,

if any, to exist, if it did exist, in said culvert or platform?"

To this the jury answered, "Yes."

"Question 9. If, in answer to the foregoing question 8, you say 'Yes,' and only in that event, then answer this question: Was such negligence the proximate cause of the injury, if any, received by plaintiff?"

To this the jury answered, "Yes."

Question No. 10 related to the city of Beaumont and has no application here.

Question No. 11 submitted the measure of damages, and the jury answered that $5,000 would be a reasonable and fair compensation to the plaintiff.

[1] At the request of counsel for appellee, the trial judge gave to the jury the following special charge:

"You are further instructed in connection with the main charge in this case as follows, to wit:

"When a common carrier uses an approach, platform, bridge, or other structure as a means and as a place for the approach to its cars, or as a place where passengers wait for the cars for the purpose of taking passage over the same, or as a place to alight from the said cars after having taken passage over the same, that it is the duty of such common carrier to keep and maintain the said approach, platform, bridge, or other structure in a reasonably safe condition and repair for the use to which it is being put."

This special charge was duly objected to by counsel for appellant but the court overruled the objection, and counsel for appellant has properly saved the point for our consideration. One of appellant's contentions is that this special charge just quoted placed upon appellant a greater burden than rested upon it by law, in that the effect of this special charge was to tell the jury that the duty resting upon appellant to keep the platform or bridge in proper repair was absolute, and that if the jury found that this bridge was not in proper repair, then appellant was liable to appellee to the extent of the injuries sustained by her on the occasion in question, regardless of any degree of care that it might have used in maintaining this structure. This proposition we sustain. This special charge unquestionably had the effect to tell the jury that the duty resting upon appellant to keep this bridge, platform, or whatever the structure should be called, in a reasonably safe condition and repair, was absolute, which is not the law of this state, and, this error having been duly and properly called to the trial court's attention before this special charge was given, the trial court was in error in declining to sustain the objection. T. & P. Ry. Co. v. Maughon (Tex. Civ. App.) 139 S. W. 611; G. C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; I. & G. N. Ry. Co. v. Underwood, 64 Tex. 469; G. C. & S. F. Ry. Co.

v. Killebrew (Tex. Sup.) 20 S. W. 182; Dallas Consolidated Ry. Co. v. Randolph, 8 Tex. Civ. App. 213, 27 S. W. 926. The error in giving this special charge must reverse this judgment. We do not understand learned counsel for appellee to contend in his brief before this court that this special charge was not affirmatively erroneous, as we have pointed out, but they do contend that even if it was affirmatively erroneous, the error was harmless, and that the judgment should not be reversed for such error. We cannot agree with learned counsel for appellee in this connection, and our Commission of Appeals has held, in a comparatively recent case has held, in substance, with the approval of the Supreme Court, that where an erroneous charge is given, whether the case be submitted to the jury under a general charge or special issues, it must have the effect to reverse the judgment, unless it clearly appears that no harm was done to the losing party by the giving of the charge. Osceola Oil Company v. Stewart Drilling Company (Tex. Com. App.) 258 S. W. 806. See, also, Lamar v. Railway Company (Tex. Com. App.) 248 S. W. 34.

Upon the whole of the record in this case, it cannot be said that the giving of this special charge, telling the jury that an absolute duty rested upon appellant to keep the bridge or platform in question in a reasonably safe condition, was not prejudicial to appellant. We therefore hold, under the authorities cited, that the giving of this special charge was such an error as to require this court to reverse this judgment.

We have already stated above that the appellee's petition in this case predicates liability against appellant, the Eastern Texas Electric Company, upon the ground that it constructed, maintained, and used the bridge or platform in Elgie street where the appellee was injured as an approach and platform to be used by patrons of the company in boarding or alighting from its street cars. We have also shown above that, under appellant's franchise and the charter of the city of Beaumont, it was not authorized to use any portion of the city's streets or alleys or bridges or culverts in the streets of the city, nor any other portion of the city streets, with the exception of the space between the two track rails and for a distance of 24 inches on each side of the track rails. Appellant would have no authority to build bridges or culverts or in any manner obstruct the streets of the city, outside of that portion of the street permitted to it under its franchise and the city's charter, and, if the city or some one else built this bridge and maintained it, appellant would not be liable because of a defect in it at a point not within such distance of appellant's track rails as appellant was authorized and required to keep in repair. Now, under appellant's franchise and express language of the city charter, it is beyond question, as es-

tablished by the jury's finding, that the defect in the bridge that caused appellee's injuries was more than 24 inches from appellant's outside track rail, because the jury expressly found that the hole or defective condition of the bridge that caused the injury was 33 inches from appellant's outside track rail. In view of this finding and under the provisions of the franchise and the city charter, appellant was entitled to a judgment upon this finding unless the evidence adduced upon the trial was reasonably sufficient to show, in keeping with appellee's allegations, that appellant in fact constructed and maintained or undertook to maintain and keep in repair the bridge at the point where the defect existed which resulted in appellee's injuries. We have searched this record most carefully, and we fail to find any evidence to the effect that appellant constructed this bridge or platform, or that it ever at any time maintained or undertook to maintain it, outside of a distance of 24 inches from its track rails.

[2] It is true that the evidence was sufficient to show that appellant's street cars regularly stopped at the point where appellee was injured, both for the purpose of permitting passengers to board its cars and to alight therefrom, but, in our opinion, that did not render appellant liable because of a defect in any portion of this bridge or platform if the same was not constructed or maintained or attempted to be maintained by appellant. The mere fact that it stopped its street cars at that point for the accommodation of passengers should not subject it to liability for an injury sustained by one at a point where appellant had no right to obstruct the same in any manner. We do not think that any of the authorities cited by energetic counsel, and certainly none from the courts of this state, compel a different conclusion on this point.

[3] The strongest evidence in this record, as we see it, tending to show that appellant constructed and maintained, or attempted to maintain, this bridge or platform was the evidence of one witness, a son of appellee, that he at one time, about six months before the accident, saw some Mexicans and negroes get off of one of appellant's street cars with tools and material and do some repair work on this bridge, but this witness did not state by whose authority this work was done, whether that of the city of Beaumont or of appellant, and it would be the merest conjecture upon this character of testimony to hold that it was sufficient to warrant a finding that appellant constructed and maintained

or attempted to maintain this bridge or platform at a distance further than 24 inches from the outside of its track rails. It will be noted from the form of the first special issue, as we have quoted it above, that the same was very adroitly drawn, and was not in keeping with the allegations of appellee's petition. The jury was not asked by that special issue whether appellant constructed and maintained or attempted to maintain and use this bridge or platform as a place of approach for passengers, but the question was whether, by custom or otherwise, appellant had adopted this bridge, etc. We cannot agree with counsel for appellee that the mere use by patrons of the street car company of portions of the bridge, covering, as the proof shows in this case, the entire width of Elgie street, and not upon that portion of the street that appellant was authorized to use, under its franchise and the city's charter, would render appellant liable in damages for injuries sustained. Therefore, upon another trial, if the evidence adduced fails to show that the bridge or platform or structure, upon which appellee was injured, was constructed and maintained by appellant as an approach or platform to be used by passengers on its cars, and in that way invited the use of such bridge or platform by passengers, the court should instruct a verdict for appellant, unless it should be established that the defective condition of the bridge causing the injury was within 24 inches of appellant's outside track rails.

There are many other errors assigned by appellant for reversal of this judgment, but, as it seems to us that none of them will probably occur upon another trial, we will not further mention them. We will make this suggestion, however, in conclusion. The appellee pleaded, in substance, that in addition to the hernia which she alleged she sustained, she was badly bruised and lacerated on different portions of her body and limbs, but she nowhere specifies the character of these injuries nor where located, but upon the trial she was permitted to offer proof by several witnesses that large black and blue bruises were seen upon her body and limbs after this accident, and that she suffered intense pain in different portions of her body. These matters were timely raised by special exceptions to appellee's petition, but the court overruled them, and we would suggest that, upon another trial, these special exceptions be sustained and appellee be required to plead specifically all the injuries that she expects to offer proof of upon the trial.

Judgment reversed, and cause remanded.